# In the United States Court of Federal Claims
OFFICE OF SPECIAL MASTERS
No. 13-1000V
Filed: July 18, 2014

| | |
|---|---|
| * * * * * * * * * * * * * * * * | **PUBLISHED** |
| DAVID HERREN and THERESA HERREN, * | |
| Grandparents and Legal Guardians of A.H., * | |
| a minor, * | |
| * | Special Master |
| Petitioners, * | Hamilton-Fieldman |
| * | |
| v. * | |
| * | Dismissal Decision; RCFC 12(b) (6); |
| SECRETARY OF HEALTH * | Hepatitis A, Varicella Vaccines. |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * * * * * * * * * * * * * * * * | |

Meredith Daniels, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for Petitioners.
Heather L. Pearlman, United States Department of Justice, Washington, DC, for Respondent.

## DECISION DENYING RESPONDENT'S MOTION TO DISMISS[1]

On December 17, 2013, David and Theresa Herren ("Petitioners") filed a petition on behalf of their granddaughter, A.H., for compensation under the National Vaccine Injury Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"), alleging that she developed Guillain-Barré syndrome ("GBS") as a result of the administration of hepatitis A

---

[1] Because this published decision contains a reasoned explanation for the action in the case, the undersigned intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347 § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to file a motion for redaction "of any information furnished by that party (1) that is trade secret or commercial or financial information and is privileged or confidential, or (2) that are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). In the absence of such motion, the entire decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42. U.S.C. § 300aa (2006).

1

("Hep A") and varicella vaccinations on May 25, 2011.  Petition ("Pet.") at 1, ECF No. 1.  After a review of the petition and supporting documents, Respondent filed a Motion to Dismiss ("MTD"), asserting that Petitioners did not establish that A.H. suffered from her injury for more than six months. Resp't's Report and Motion to Dismiss, ECF No. 10.  Therefore, Respondent argues, the claim must be dismissed for failure to state a claim upon which relief may be granted.  For the reasons stated herein, Respondent's Motion is DENIED.

# I

## APPLICABLE LEGAL STANDARD

Pursuant to RCFC 12(b)(6), the court may dismiss a petition for failure to state a claim.  *Bass v. Sec'y of Health & Human Servs.*, 12-135V, 2012 WL 3031505, at *5 (Fed. Cl. Spec. Mstr. June 22, 2012).  To properly state a claim, the petitioner must provide "a short and plain statement of the claim, which shows that the petitioner is entitled to relief." *Totes–Isotoner Corp. v. United States*, 594 F.3d 1346, 1354 (Fed. Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint does not need detailed factual allegations, but "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555.

Rules of the United States Court of Federal Claims (RCFC) and the Federal Rules of Civil Procedure (FRCP) are nearly identical, with Rule 12(b)(6) worded the same as the Federal Rules.[3]  The United States Supreme Court has interpreted Rule 12(b)(6) as requiring a plaintiff to present "[f]actual allegations ... [that] raise a right to relief above the speculative level."  In emphasizing the need to plead "facts," the Supreme Court has rejected a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.*, 550 U.S. at 545.

Although the Vaccine Rules do not directly include Rule 12(b)(6), special masters have entertained motions based upon Rule 12(b)(6) because the standards for pleadings in the Vaccine Program are similar to the standards for pleadings in traditional civil litigation.[4]  *See Warfle v.*

---

[3] Both FRCP and RCFC Rule 12(b)(6) state: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: … (6) failure to state a claim upon which relief can be granted …."

[4] Vaccine Rule 8(d) lays out guidance for when a Special Master should apply procedures set forth in RCFC: "The special master may decide a case on the basis of written submissions without conducting an evidentiary hearing.  Submissions may include a motion for summary judgment, in which event the procedures set forth in RCFC 56 will apply."  With respect to this case, RCFC 12(b)(6) applies because the undersigned is ruling on a Motion to Dismiss and not a Motion for Summary Judgment.

*Sec'y of Health & Human Servs.*, 05-1399V, 2007 WL 760508 (Fed. Cl. Spec. Mstr. Feb. 22, 2007) (holding that in ruling on a Motion to Dismiss, the court must draw every inference concerning disputed facts in favor of the nonmoving party); *Guilliams v. Sec'y of Health & Human Servs.,* No. 11–716V, 2012 WL 1145003, at *9, *10 (Fed. Cl. Spec. Mstr. Mar. 14, 2012); *Richard v. Sec'y of Health & Human Servs.,* No. 02–877V, 2010 WL 2766742, at *4, *5 (Fed. Cl. Spec. Mstr. May 3, 2010).

In *Warfle*, the special master considered a motion to dismiss for failure to state a claim, in which the respondent argued that the petitioner had failed to offer sufficient evidence concerning one of the requirements of § 300aa-11(c)(1)(D)(i). *Warfle*, 2007 WL 760508, at *2. The special master concluded that in evaluating that motion, he need only assess whether the petitioner could meet the Act's requirements and prevail, drawing all inferences from the available evidence in petitioner's favor. *Id.* In that case, he found that on the basis of various documents submitted, a reasonable fact-finder could conceivably rule in petitioner's favor, so petitioner's case survived the dismissal motion. *Id.*

## II

## ANALYSIS

In her Motion to Dismiss, Respondent correctly cites to the statutory requirement under 42 U.S.C. § 300aa-11(c)(1)(D)(i), that residual effects of an alleged vaccine-related injury must last for more than six months. Resp't's Motion to Dismiss at 5, ECF No. 10. Here, Petitioners allege that A.H.'s injuries were caused by the hepatitis A and varicella vaccinations she received on May 25, 2011. Pet. at 1-3. Petitioners allege that A.H. experienced the residual effects of her vaccine injury for more than six months. Pet'rs' Response to Resp't's Motion to Dismiss at 2, 4, ECF No. 11. Petitioners argue that the injuries to A.H. meet the six-month threshold requirement under 42 U.S.C. § 300aa-11(c)(1)(D)(i); they assert that "[t]he Act does not state that these symptoms must be documented in medical records." Pet'rs' Response to Resp't's Motion to Dismiss ("Response") at 4, ECF No. 11. Petitioners argue that the record as a whole supports a finding that A.H.'s symptoms continued for more than six months. *Id.* In fact, Petitioners argue that A.H. continues to experience symptoms related to her GBS, including muscle aches and back aches. *Id.*

The Vaccine Act states in pertinent part that the petitioner must have: "(i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months **after the administration of the vaccine**, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury, or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention." 42 U.S.C. § 300aa-11(c)(1)(D)(i)-(iii) (emphasis added). While both parties in this case offered evidentiary arguments concerning the onset of A.H.'s symptoms, the date of symptom onset is not relevant to the 6 month residual effect inquiry; A.H's "6 months" runs from May 25, 2011, the date of her vaccinations. Pet'rs' Ex. 7 at 1. *See, e.g., Gerami v. Sec'y of Health & Human Servs.*, 2013 WL 5998109, at *3 (Fed. Cl. Sp. Mstr. Oct. 11, 2013) ("Under the Vaccine Act, the residual effects of such injuries must have persisted beyond May 27, 2012, six months after Ms. Gerami's

3

November 27, 2011 vaccination."), *aff'd*, No. 12-442, slip op. at 6-10 (Fed. Cl. Mar. 31, 2014). In this case, six months following vaccination is November 25, 2011.

A.H. experienced back and leg pain on July 27, 2011, during a visit to her aunt and uncle. Pet'rs' Ex. 13 at 1. By July 30, 2011, A.H. was in such pain that she cut her visit short, and her grandmother had to pick her up and bring her home. *Id.* at 2. Petitioners further aver that A.H.'s pain continued, and by August 4, 2011, she was experiencing weakness in her legs and was falling; she said she felt like her knees were bending when she did not want them to. *Id.* A.H. presented to the ER two days later, on August 6, 2011 and was diagnosed with GBS. Pet'rs' Ex. 3 at 4-11. She began treatment with IVIG and Neurontin on August 7, 2011.[5] Pet'rs' Ex. 3 at 39-40. A.H. responded well to her treatment, and was discharged from the hospital on August 9, 2011. Pet'rs' Ex. 3 at 2-3. She began outpatient physical therapy and after eight weeks was discharged from physical therapy. Pet'rs' Ex. 12 at 43-44. On September 28, 2011, A.H. saw Dr. Farber, her treating neurologist. Pet'rs' Ex. 5 at 1-3. During this visit, Dr. Farber noted that "at times, [A.H.] can be a bit more fatigued than she has been in the past." Pet'rs' Ex. 5 at 1. Dr. Farber also reported that A.H. is still "areflexive." *Id.* at 1-2. At that time, Dr. Farber "told A.H.'s parents that she may return to school, as she has been homebound since discharge." *Id.* at 3. Dr. Farber also noted he would "see her back for follow-up in 4 months' time" and that "[i]f she continues to do well, [he] will discharge her at that time." *Id.* A.H. returned to Dr. Farber on January 31, 2012, and she was reported to be doing well since her last visit in September 2011, without any motor concerns. Pet'rs' Ex. 8 at 1-3. Her balance, strength, and coordination were normal; her reflexes had returned; and her physical examination revealed normal gait, reflexes, and tone. *Id.* There were no "additional issues to report," and Dr. Farber discharged A.H. from his neurology practice. *Id.*

Respondent argues that "[s]imply because A.H. saw Dr. Farber on January 31, 2012, does not mean that she still suffered residual effects from her GBS on that date." Resp't's Response to Order at 3, ECF No. 13. However, A.H. was still clearly suffering residual effects four months post-vaccine; Dr. Farber did not deem her sufficiently recovered to discharge her at that time, and directed Petitioners to "follow up in 4 months' time." Pet'rs' Ex. 5 at 3.

On a motion to dismiss, the undersigned must construe the facts in the light most favorable to the nonmoving party (here, Petitioners). *See Nelson Const. Co. v. United States*, 79 Fed. Cl. 81, 85 (Fed. Cl. Oct. 29, 2007). Under that standard, the undersigned concludes that A.H. was actively treating for her allegedly vaccine-caused injury through the date of discharge

---

[5] Section 11(c)(1)(D) presents two alternative grounds for eligibility to compensation if a petitioner does not meet the six months threshold. The first alternative is death from the vaccine. The second alternative is inpatient hospitalization and surgical intervention. Respondent states in her motion to dismiss that "[a]lthough [A.H.] was admitted to Kosair for her symptoms, her condition did not require surgical intervention." Resp't's Response to Order at 2, ECF No. 13. The statutory requirement of surgical intervention is only necessary when used as an alternative pleading ground for meeting the six months threshold. Here, the six months threshold is satisfied. Therefore, for purposes of Respondent's Motion to Dismiss, it is not necessary for the undersigned to determine whether a lumbar puncture and IVIG are surgical interventions that satisfy the Act's severity requirement.

from Dr. Farber's care on January 31, 2012, over eight months after her May 25, 2011 vaccination.

Furthermore, a discharge from medical care does not necessarily indicate there are no residual effects. A.H. continued to experience mild residual muscle pain and back aches as a result of her GBS, even after her discharge from Dr. Farber's care. Pet'rs' Ex. 13 at 3. As Petitioners explain, muscle pain and back aches are common sequelae following GBS. Pet'rs' Response to Resp't's Motion to Dimiss at 3. These are residual symptoms which, due to their mild nature, do not require medical care. *Id.* at 3. Petitioners add that they do not contest that A.H. has made a significant recovery; however, she still has "headaches, muscle and back aches that she did not have prior to her GBS." Pet'rs' Ex. 13 at 3.

The undersigned finds the residual effects of vaccine-caused injuries persisted at least six months after the petitioner's vaccination date because A.H. was still under the medical care of her neurologist until January 31, 2012. These facts, combined with the post-vaccinal records of August 2011, provide a set of circumstances which, if proven in a hearing and connected to a medical or scientific theory of causation, *could* allow Petitioners to prevail on the merits. This is all that is necessary for Petitioners to clear the relatively low hurdle presented by a motion to dismiss.

### III

### CONCLUSION

Based on the record as a whole, Petitioners have demonstrated that A.H. experienced the residual effects of her alleged vaccine-related injury for at least six months as outlined in the Vaccine Act. **Therefore Respondent's Motion to Dismiss is DENIED.**

**IT IS SO ORDERED.**

    /s/ Lisa D. Hamilton-Fieldman
      Lisa D. Hamilton-Fieldman
      Special Master